It appeared in evidence that the plaintiff, who was a trader in slaves, had been to the defendant's house, and had an interview with him in relation to purchasing the slave in question, *Page 529 
some three weeks before the trade took place; that on the day before the trade, he took with him a practicing physician, a relation of his, to see and examine the slave. On their way they met with one Elliott, who informed them that he had heard the slave had some "religious monomania," and "occasional spells in the head." The defendant was not at home when the plaintiff arrived there with the physician. On the next day the defendant went to a neighboring village, and there the physician above referred to, acting under the instructions of the plaintiff, had an interview with the defendant in relation to the purchase of the slave. In the course of this negotiation the defendant stated that the negro was sound, but he would not warrant him; that a brother of his had sold a slave to one Slade and warranted him, whereby he came near getting into a lawsuit. The defendant tendered to the plaintiff the following bill of sale, "Received of H. W. Fulenwider eight hundred and fifty dollars, in full consideration for a negro boy named Lewis, aged 33 years, the title of which I hereby warrant and defend to the said Fulenwider, but don't warrant him to be sound in any way whatever," and stated that unless he would take the slave with that bill of sale, he would not trade at all. The trade was then concluded on these terms, and the bill of sale delivered.
The only deficiency of the slave, attempted to be proved, was a peculiar religious fervor, for which two physicians testified, "there was no name in the medical books, and the symptoms of which manifested themselves in actions and motions of the head, which, in their opinion, depreciated his value." They considered the negro unsound, and the disease an affection of the nerves and brain.
The Court instructed the jury, that before the plaintiff could recover, he must prove to the satisfaction of the jury that the slave was unsound at the time of the sale, and that the defendant knew it, and represented falsely, with the intention to defraud the plaintiff, that the slave was sound, and thereby induced the plaintiff to make the purchase; and they must further believe, from the testimony, that the plaintiff *Page 530 
did not know, nor had reason to believe, that the slave was unsound.
The defendant's counsel insisted that the facts disclosed to the plaintiff, before his purchase, were a sufficient notice to put him upon a diligent enquiry, and enable him thereby to ascertain the truth, and, therefore, that he could not recover.
On this point his Honor charged the jury, that if the plaintiff did not believe, or rely on the information received from other sources, but did rely on the statements made by the defendant, and if they should find that the representations of the defendant were false, and intended to deceive, and did deceive, they should find for the plaintiff. To this charge defendant excepted.
Verdict and judgment for the plaintiff. Defendant appealed.
We do not concur with his Honor in the view taken by him of this case in the latter part of the charge. The bill of sale would have been, of itself, sufficient to put most men upon enquiry, so as to prevent them from concluding the purchase, unless there was an overweening desire to rush into a lawsuit, which it is the policy of the common law to prevent. Hence the maxim "caveat emptor" is applicable whenever the purchaser is put on enquiry, or has reason to believe that the property is unsound. But besides the bill of sale, the witness, Elliott, gave the plaintiff express notice of the unsoundness of the slave. And besides all this the plaintiff had an opportunity of having the slave examined by a physician in his presence, and the symptoms were by no means hidden or hard to be discovered. Under these circumstances the plaintiff could not be allowed to say that he relied on what the defendant said as to the soundness of the slave. He ought to have required a warranty, or refused to buy; and has no right to insist that the jury should be required *Page 531 
to find whether he relied on what the defendant said, or upon his other sources of information. Any prudent man would have relied upon the latter, and if the plaintiff did not, it is his own folly!
PER CURIAM. Judgment reversed, and a venire de novo.